Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANK MCGUIRE,<br><br>    Plaintiff,<br><br>    v.<br><br>FRANK'S INTERNATIONAL N.V., MICHAEL C. KEARNEY, MICHAEL E. MCMAHON, ROBERT W. DRUMMOND, D. KEITH MOSING, KIRKLAND D. MOSING, MELANIE M. TRENT, ALEXANDER VRIESENDORP, ERICH L. MOSING, and L. DON MILLER,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Frank McGuire ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## <u>NATURE OF THE ACTION</u>

1.      This is an action against Frank's International N.V. ("Frank's" or the "Company") and its Board of Supervisory Directors (the "Board" or the "Individual Defendants") for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Frank's and Expro Group Holdings International Limited ("Expro"). Upon closing of the Proposed Transaction, Expro will merge with and into a direct wholly owned subsidiary of Frank's ("Merger Sub"), with Merger Sub surviving the Proposed Transaction as a direct, wholly owned subsidiary of Frank's.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.[1]

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

---

[1] For example, the Company reportedly participated in conferences in New York City in recent years.

including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Frank's common stock.

7.      Defendant Frank's, together with its subsidiaries, provides various engineered tubular services for the oil and gas exploration and production, and oilfield services companies in the United States, Europe, the Middle East, Africa, Latin America, the Asia Pacific, and internationally. The Company is incorporated in The Netherlands. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "FI."

8.      Defendant Michael C. Kearney ("Kearney") is Chairman of the Board of the Company.

9.      Defendant Robert W. Drummond ("Drummond") is a director of the Company.

10.     Defendant Michael E. McMahon ("McMahon") is lead director of the Company.

11.     Defendant L. Don Miller ("Miller") is a director of the Company.

12.     Defendant D. Keith Mosing ("D. Mosing") is a director of the Company.

13.     Defendant Erich L. Mosing ("E. Mosing") is a director of the Company.

14.     Defendant Kirkland D. Mosing ("K. Mosing") is a director of the Company.

15.     Defendant Melanie M. Trent ("Trent") is a director of the Company.

16.     Defendant Alexander Vriesendorp ("Vriesendorp") is a director of the Company.

17.     Defendants Kearney, Drummond, McMahon, Miller, D. Mosing, E. Mosing, K. Mosing, Trent, and Vriesendorp are collectively referred to herein as the "Individual Defendants."

18.    Defendants Frank's and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

19.    On March 11, 2021, Frank's and Expro announced a definitive agreement under which the companies would combine in an all-stock transaction. Under the terms of the agreement, Expro shareholders will receive a fixed exchange ratio of 7.272 shares of Frank's for each share of Expro owned, subject to adjustment in specified circumstances. Upon closing of the Proposed Transaction, Expro shareholders will own approximately 65% of the merged entity, with Frank's shareholders owning approximately 35%. The press release announcing the Proposed Transaction states, in pertinent part:

**Expro and Frank's to Combine to Create a Leading Full-Cycle Service Provider**

Compelling Combination of Global Energy Services Leaders with Highly Complementary Capabilities

Shareholders to Benefit from Stock-for-Stock Transaction that Allows for Participation in Recovery Upside and Through-Cycle Resiliency due to a More Diversified Earnings Base

Transaction Brings Improved Profitability and Free Cash Flow, with Estimated Annual Cost Synergies of $70 Million

Combination Facilitates Faster, Returns-Focused Growth, with Scope for Additional Investment in Future-Facing Technologies

Strong Pro Forma Financial Profile with No Debt, Approximately $285 Million of Cash

Companies to Host Conference Call Today at 1:30 PM GMT / 7:30 AM CT

NEWS PROVIDED BY
**Frank's International N.V.**
Mar 11, 2021, 06:00 ET

4

READING, United Kingdom and HOUSTON, March 11, 2021 /PRNewswire/ -- Expro Group, a privately-held international energy services company with market leadership in well access and well flow optimization, and Frank's International (NYSE: FI), a global oil services company that provides a broad range of highly engineered drilling and completions solutions and services, today announced a definitive agreement under which the companies will combine in an all-stock transaction. Upon the closing of the transaction, Expro shareholders will own approximately 65% of the combined entity, with Frank's shareholders owning approximately 35%.

The combination brings together two companies with decades of market leadership, best-in-class safety and service quality performance, exceptional talent and global capabilities in well construction, well flow management, subsea well access, well intervention and production services. With a broad range of complementary, highly specialized equipment and services, the combined company will provide customers with cost-effective, innovative solutions across the well lifecycle, driving a stable, diverse revenue mix. The combined company will have a strong, debt-free balance sheet, robust order backlog, more than $1 billion of pro forma annual revenue as well as an ability to generate through-cycle free cash flow and growth.

*     *     *

**Proven Leadership Team**

Upon closing of the transaction, Expro Chief Executive Officer, Mike Jardon, will become Chief Executive Officer of the combined company and will be a member of the Board of Directors. Mike Kearney, Frank's Chairman, President and Chief Executive Officer, will serve as Chairman of the combined company. Quinn Fanning will serve as Chief Financial Officer of the combined company, and the remainder of the new leadership team is expected to include representatives of both companies.

In addition to Mike Kearney and Mike Jardon, the remainder of the combined company's nine-member Board of Directors will comprise five additional directors appointed by Expro and two additional directors appointed by Frank's.

The combined company will be operationally headquartered in Houston, Texas, and will maintain a significant operating presence in Lafayette, Louisiana, Aberdeen, Scotland and other key locations around the world. The principal executive office of the combined company will remain in the Netherlands.

**Transaction Terms**

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, Expro shareholders will receive a fixed exchange ratio of 7.272 shares of Frank's for each share of Expro owned, subject to

adjustment in specified circumstances. Upon the closing of the transaction, Expro shareholders will own approximately 65% of the merged entity, with Frank's shareholders owning approximately 35%. The transaction is structured to be tax-free to shareholders, and is expected to close in the quarter ending September 30, 2021, subject to approval by Frank's and Expro shareholders and customary closing conditions, including required regulatory approvals. Upon closing, the combined company will assume the Expro Group name and be listed on the NYSE exchange under the symbol "XPRO". The combined company will retain the Frank's brand name for its well construction solutions.

The Mosing family representatives on the Frank's Board unanimously support the transaction. Expro shareholders representing approximately two-thirds of ownership have agreed to support the transaction.

**Advisors**

J.P. Morgan Securities plc is serving as financial advisor and Gibson, Dunn & Crutcher LLP is serving as legal counsel to Expro. Moelis & Company is serving as financial advisor and Vinson & Elkins LLP is serving as legal counsel to Frank's.

\*      \*      \*

**ABOUT EXPRO GROUP**

For clients working across the entire well life cycle, Expro is the well flow optimization expert. With nearly 50 years of market leadership, Expro employs approximately 4,000 people across 50 countries worldwide. The company combines innovative technologies with high quality data to deliver cost-effective solutions across three main capabilities: well testing and appraisal services; subsea, completion and intervention services; and production services. Expro delivers a service that's not just state of the art, but highly accurate. www.exprogroup.com

**ABOUT FRANK'S INTERNATIONAL**

Frank's International N.V. is a global oil services company that provides a broad and comprehensive range of highly engineered tubular running services, tubular fabrication, and specialty well construction and well intervention solutions with a focus on complex and technically demanding wells. Founded in 1938, Frank's has approximately 2,400 employees and provides services to leading exploration and production companies in both onshore and offshore environments in approximately 40 countries on six continents. The Company's common stock is traded on the NYSE under the symbol "FI." Additional information is available on the Company's website, www.franksinternational.com.

20.     On April 26, 2021, Defendants caused to be filed with the SEC a Form S-4

6

Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

21.     The Registration Statement, which recommends that Frank's shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Frank's, Expro's, and the combined company's financial projections; (ii) the financial analyses performed by Frank's financial advisor, Moelis & Company LLC ("Moelis"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Moelis; and (iv) the sales process leading up to the Proposed Transaction.

22.     The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Background of the Merger; (ii) Frank's Reasons for the Merger; Recommendation of the Frank's Board; (iii) Opinion of Frank's Financial Advisor; and (iv) Unaudited Prospective Financial Information.

23.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Frank's shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Frank's, Expro's and the Combined Company's Financial Projections**

24.     The Registration Statement omits material information concerning Frank's, Expro's, and the combined company's financial projections.

25.     With respect to the Frank's Projections, the Registration Statement fails to disclose: (1) all line items underlying (i) Total Revenues, (ii) Adjusted EBITDA, and (iii) Unlevered Free

Cash Flow; (2) Frank's net income projections;[2] and (3) a reconciliation of all non-GAAP to GAAP metrics.

26.    With respect to the Expro Projections, the Registration Statement fails to disclose: (1) all line items underlying (i) Total Revenues, (ii) Adjusted EBITDA, and (iii) Unlevered Free Cash Flow; (2) Expro's net income projections;[3] and (3) a reconciliation of all non-GAAP to GAAP metrics.

27.    With respect to the Combined Company projections, the Registration Statement fails to disclose: (1) all line items underlying (i) Total Revenues, (ii) Adjusted EBITDA, and (iii) Unlevered Free Cash Flow; (2) the combined company's net income projections;[4] and (3) a reconciliation of all non-GAAP to GAAP metrics.

28.    The Registration Statement provides that, "[o]n December 31, 2020, Frank's and Expro management representatives and representatives of Vinson & Elkins and Gibson Dunn met by videoconference to discuss the Original TRA, including Frank's projections for future liability for potential payments under the Original TRA."[5]

29.    The Registration Statement, however, fails to disclose "Frank's projections for

---

[2] According to the Registration Statement, Frank's "Adjusted EBITDA is defined as **net income** (loss) . . ." *See* Registration Statement at 82 (emphasis added). Therefore, Frank's net income projections exist and must be disclosed.

[3] According to the Registration Statement, Expro's "Adjusted EBITDA is defined as **net (loss) income** . . ." *See* Registration Statement at 83 (emphasis added). Therefore, Expro's net income projections exist and must be disclosed.

[4] According to the Registration Statement, the combined company's "Adjusted EBITDA is defined as **net (loss) income** . . ." *See* Registration Statement at 83 (emphasis added). Therefore, the combined company's net income projections exist and must be disclosed.

[5] The "Original TRA" refers to the "Tax Receivable Agreement, dated as of August 14, 2013, entered into by and among Frank's, FICV and Mosing Holdings." *See* Registration Statement at 4.

future liability for potential payments under the Original TRA."

30.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

31.     When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[6]

---

[6] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 25, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

32.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Moelis' Analyses

33.     In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Moelis.

34.     The Registration Statement fails to disclose the following concerning Moelis's "*Discounted Cash Flow Analysis—Standalone*" of Frank's and Expro's: (1) all line items underlying Frank's and Expro's respective unlevered free cash flow projections; (2) the individual inputs and assumptions underlying the (i) range of discount rates of 10.750% to 14.500%, and of 10.625% to 14.375%, and (ii) range of multiples of 5.50x to 8.50x, and of 6.50x to 9.50x; (3) the respective after-tax unlevered free cash flows of Frank's and Expro for the calendar years ending December 31, 2021 through December 31, 2025, and all underlying line items; (4) the terminal values of Frank's and Expro; (5) Frank's and Expro's U.S. net operating losses ("NOLs"); (6) the estimated payments under the Original TRA provided by Frank's; and (7) the estimated pension contributions beyond 2025 provided by Expro.

35.     The Registration Statement fails to disclose the following concerning Moelis's "*Discounted Cash Flow Analysis—Pro Forma Combined*": (1) all line items underlying the *pro forma* future unlevered free cash flows projected by the managements of Frank's and Expro to be generated by the combined company; (2) the *pro forma* terminal value of the combined company; (3) the closing date TRA Payment and estimated total transaction fees and expenses; (4) the individual inputs and assumptions underlying the (i) range of discount rates of 10.375% to 14.125%; and (ii) range of multiples of 6.2x to 9.2x; (5) the estimated *pro forma* after-tax unlevered free cash flows of the combined company for the calendar years ending December 31, 2021 through December 31, 2025, and all underlying line items; (6) the *pro*

*forma* U.S. NOLs of the combined company; and (7) the estimated pension contributions beyond 2025 provided by Expro.

36.     With respect to Moelis's analysis of Wall Street research analysts' stock price targets for Frank's common stock, the Registration Statement fails to disclose: (1) the individual price targets observed by Moelis in its analyses; and (2) the sources thereof.

37.     The valuation methods, underlying assumptions, and key inputs used by Moelis in rendering its purported fairness opinion must be fairly disclosed to Frank's shareholders. The description of Moelis's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Frank's shareholders are unable to fully understand Moelis's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3.  Material Omissions Concerning Potential Conflicts of Interest Involving Moelis**

38.     The Registration Statement omits material information concerning potential conflicts of interest involving Moelis.

39.     The Registration Statement provides that "Frank's has agreed to pay Moelis certain fees for its services, including an opinion fee upon delivery of any opinion (regardless of the conclusion reached in that opinion) and a transaction fee upon consummation of the Merger."

40.     The Registration Statement, however, fails to disclose: (1) the specific amount of compensation Moelis has received or will receive in connection with its engagement by the Company; (2) the specific amount of Moelis's compensation that is contingent upon consummation of the Proposed Transaction; and (3) whether Moelis and/or its affiliates have

performed past services for Mosing Holdings, the Mosing family, and/or their affiliates, and/or Oak Hill Advisors, L.P. (a significant shareholder of Expro) and/or its affiliates, including the timing and nature of those services and the amount of compensation received for providing such services. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

41.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

42.     The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4.     Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

43.     The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

44.     The Registration Statement provides that:

On October 22, 2020, Expro delivered a written indication of interest, offering to combine with Frank's in a stock-for-stock transaction pursuant to which Expro shareholders would own 69% of the Combined Company and Frank's shareholders would own 31% of the Combined Company, assuming no payments were made to Mosing Holdings under the Original TRA. In prior conversations, Expro's advisors had communicated that the equity split should be adjusted in favor of Expro by 0.1% for every $3 million paid to Mosing Holdings in settlement of the TRA obligations.

12

45.     The Registration Statement, however, fails to disclose the timing and nature of those "prior conversations," including whether any member of the Mosing family were involved in those conversations.

46.     The Registration Statement provides that, "on October 22, 2020, Company B delivered a written indication of interest offering to combine with Frank's in a stock-for-stock transaction at a fixed exchange ratio calculated based on the stock prices of Frank's and Company B as of such time, with the Combined Company to be managed entirely by Company B's management team."

47.     The Registration Statement, however, fails to disclose the terms and values of Company B's indication of interest.

48.     The Registration Statement further fails to disclose the implied control premium or governance matters envisioned by Expro's proposal.

49.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

52.     Each of the Individual Defendants, by virtue of his/her positions within the

Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

53.     The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

54.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

55.     Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

56.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and

dissemination of the false and misleading Registration Statement.

58.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

59.    In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

60.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

61.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 25, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*